IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-54-BO

| | |
|---|---|
| TIMOTHY HUGHES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     O R D E R |
| | ) |
| DYNCORP INTERNATIONAL LLC, | ) |
| | ) |
|     Defendant. | ) |

This cause comes before the Court on defendant's motion to dismiss or, in the alternative, transfer venue to the United States District Court for the Eastern District of Virginia. [DE 11]. The matter has been fully briefed and is ripe for disposition. For the reasons that follow, defendant's motion to dismiss [DE 11] is GRANTED and this action is DISMISSED for lack of personal jurisdiction.

## BACKGROUND

Defendant, DynCorp International LLC ("DynCorp"), is a "government services provider that supports U.S. national security and foreign policy objectives by delivering support solutions for defense, diplomacy and international development." [DE 12, p. 1]. DynCorp is incorporated in Delaware but is headquartered in and maintains its primary place of business in McLean, Virginia. *Id*. DynCorp employs more than 13,000 people in 27 countries. *Id*. at 2. 118 of those employees work in North Carolina at DynCorp's offices at Fort Bragg and Elizabeth City. *Id*.

Plaintiff, Mr. Timothy Hughes, is a former DynCorp employee. He worked for DynCorp from 2012 to 2017 as a Security Specialist and Coordinator at U.S. military bases in Afghanistan. [DE 1, ¶ 3; DE 12-1, p. 2]. Over the course of his employment with DynCorp, plaintiff signed

several Foreign Service Employment Agreements ("FSAs"). [DE 12-1, p. 2]. Plaintiff signed the first FSA in November 2012 in Texas. *Id.* Upon his rehiring, plaintiff signed a new 12-month FSA in January 2015. *Id.* Plaintiff and DynCorp renewed the January 2015 FSA twice, with the second renewal occurring in November 2016. *Id.* DynCorp asserts that it emailed the renewal to plaintiff—who was working in Afghanistan at the time—on November 25, 2016, and plaintiff returned the signed FSA the following day. *Id.* at 2–3. DynCorp claims, however, that plaintiff had secretly altered five provisions in the FSA without informing DynCorp. *Id.* at 3.

In August 2017, plaintiff left DynCorp prior to the completion of his most recent FSA in order to attend reserve officer training with the U.S. Marine Corps. [DE 1, ¶ 9; DE 12-1, p. 3]. Plaintiff intended to return to work for DynCorp, but in October 2017 he was informed that he was ineligible for re-hire. [DE 1, ¶¶ 6–12]. Plaintiff asserts that DynCorp informed him that he was not eligible for re-hire because his departure in August 2017 had not been compliant with the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301, *et seq*. [DE 1, ¶ 12]. DynCorp claims that plaintiff was ineligible because it had discovered that he had fraudulently modified the terms of his most recent FSA. [DE 12-1, p. 3].

Plaintiff contacted a USERRA investigator to complain. [DE 1, ¶ 13]. Plaintiff alleges that DynCorp informed the investigator that USERRA did not apply to plaintiff because he was an overseas employee, but the investigator advised that USERRA did apply to overseas employees. *Id.* ¶ 14. Plaintiff alleges that DynCorp then informed the investigator that plaintiff's "USERRA claim was being denied because [DynCorp] learned that [plaintiff] had made changes to his employment contract." *Id.* ¶ 15. DynCorp allegedly told the investigator that it "would honor USERRA's requirement to re-employ[] [plaintiff] but that he would then be terminated immediately because of the contract issue." *Id.* ¶ 16. Plaintiff alleges that DynCorp advised that,

2

unless he "drop[ped] his USERRA claim," his personnel file would be modified to reflect a termination rather than a resignation, which would negatively affect plaintiff's ability to secure employment with another government contractor. *Id.* ¶¶ 17–18. Because he "wished to continue working for government contractors in Afghanistan," plaintiff withdrew his USERRA claim. *Id.* ¶¶ 21–22.

In March 2019, plaintiff initiated this action, asserting a single cause of action against DynCorp for allegedly violating USERRA. [DE 1]. Specifically, plaintiff claims that he "was refused re-employment and retaliated against for making a USERRA claim," and that DynCorp "attempt[ed] to prevent [him] from exercising his rights under USERRA and . . . threat[ened] to alter employment documents if he continued with his USERRA claim." [DE 1, ¶¶ 22–26].

DynCorp has moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer the case under 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Virginia. [DE 11]. DynCorp first argues that this Court lacks personal jurisdiction over it because its headquarters and principal place of business are in Virginia and it has only a "very limited presence in North Carolina" and the "facts do not support an exercise of personal jurisdiction by North Carolina courts over [DynCorp] in this matter." [DE 12, p. 3–4]. DynCorp next argues that plaintiff's most recent FSA, signed in November 2016, governs the employment relationship at issue in this matter and includes an exclusive forum-selection clause requiring disputes to be resolved in the Eastern District of Virginia. [DE 12, p. 4; *see* DE 12-1, p. 26–27].

Plaintiff has responded in opposition to dismissal, arguing that this Court does have specific personal jurisdiction over DynCorp and that transfer is inappropriate given the venue provisions in USERRA. [DE 13].

3

DISCUSSION

Defendant argues that the instant suit must be dismissed under Federal Rule of Civil Procedure 12(b)(2). A suit may be dismissed under Rule 12(b)(2) if a court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). District courts must view the allegations in the light most favorable to the plaintiff and draw inferences in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

In his response, plaintiff argues only that this Court possesses specific, rather than general, jurisdiction over DynCorp. Federal courts may exercise specific jurisdiction over a nonresident defendant if (1) "such jurisdiction is authorized by the long-arm statute of the state in which the district court sits" and (2) "application of the long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Here, the Court must look to North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, which permits courts to exercise jurisdiction to the "outer limits allowable under federal due process." *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977). To determine whether the exercise of jurisdiction over a defendant comports with the Due Process Clause, courts must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claim [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather*, 773 F.3d at 559 (citing *Tire Eng'g v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)) (alteration in original).

4

Specific jurisdiction requires courts to focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotations omitted). To meet the third requirement, that personal jurisdiction be constitutionally reasonable, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284.

Even construing the allegations in the light most favorable to plaintiff and drawing all inferences in favor of finding jurisdiction, the Court finds that it does not have specific personal jurisdiction over DynCorp in this matter. It is plain that DynCorp has purposefully availed itself of the privilege of conducting activities in North Carolina, hiring more than one hundred employees and operating at least two offices within the state. But this case involves only DynCorp's refusal to re-hire plaintiff and its alleged retaliation against him due to the filing of his USERRA claim. Those events do not "arise out of" DynCorp's activities in North Carolina. DynCorp—which is, again, organized under the laws of Delaware and headquartered in Virginia—argues that its North Carolina operations, and therefore its North Carolina employees, are wholly unrelated to the program that plaintiff was involved with overseas. Plaintiff has never worked for DynCorp *in* North Carolina, and did not even begin his employment relationship with DynCorp in North Carolina. Rather, he asserts that because he received mail and email in North Carolina and his paychecks were deposited in his bank account in North Carolina, specific jurisdiction exists. The fact that DynCorp's retaliatory conduct "was purposefully directed to impact a North Carolina citizen's re-employment," [DE 13, p. 2], does not create a basis for exercising jurisdiction.

Simply put, DynCorp's "suit-related conduct" did not "create a substantial connection" with North Carolina. *See Walden*, 571 U.S. at 284. This suit involves a dispute over USERRA's applicability to plaintiff, plaintiff's alterations to and signing of an employment contract while he

5

was in Afghanistan, and DynCorp's interactions with plaintiff and a USERRA investigator concerning his re-hiring. None of these issues arise from DynCorp's conduct in North Carolina. None of DynCorp's North Carolina employees were involved in any of the company's decisions regarding plaintiff's rehiring or his USERRA claim. Plaintiff's claims did not arise from work he completed in North Carolina. The singular fact that plaintiff resided in North Carolina at the time he applied for overseas re-employment with DynCorp does not establish a connection between this suit and DynCorp's contacts with North Carolina. As such, it would not be constitutionally reasonable to subject DynCorp to suit in this matter in North Carolina. This Court lacks specific jurisdiction.

Additionally, this Court does not possess general jurisdiction over DynCorp. Plaintiff does not attempt to argue otherwise in his response to DynCorp's motion to dismiss. A corporation is not subject to general jurisdiction in every state in which it engages in substantial, continuous business; rather its "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 (2014). DynCorp's contacts with North Carolina are not so continuous and systematic as to render it at home in North Carolina. As such, this Court lacks general jurisdiction over DynCorp.

Given that the Court lacks personal jurisdiction over DynCorp in this matter, dismissal is appropriate. DynCorp requests a dismissal with prejudice. But because the Court lacks jurisdiction over this matter, it "has no power to adjudicate and dispose of a claim on the merits" and dismissal without prejudice is required. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013); *see also Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005) ("[U]pon a determination that personal jurisdiction is lacking, a court

should not dismiss a case on the merits."). As such, DynCorp's motion to dismiss is granted and plaintiff's complaint is dismissed without prejudice.

## CONCLUSION

For the above reasons, defendant's motion to dismiss [DE 11] is GRANTED and this action is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction. The Clerk is DIRECTED to close the case.

SO ORDERED, this 23 day of June, 2019.

*Terrence W. Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE